IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SHANNON JETER,

    Plaintiff,

v.                                                                  No. 18-cv-0913 SMV/CG

LEA COUNTY DETENTION FACILITY
and ARTURO SALINAS,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendants Lt. Arturo Salinas and Lea County Detention Facility ("LCDF")'s Motion for Summary Judgment, [Doc. 15], [Doc. 16],[1] filed on January 16, 2019. Plaintiff responded on January 30, 2019. [Doc. 17]. Defendants replied on February 7, 2019. [Doc. 18]. The parties consented to have the undersigned conduct dispositive proceedings in this matter. [Doc. 14]. The Court held oral argument on the Motion on February 28, 2019. [Doc. 21] (Clerk's Minutes). The Court has considered the briefing, oral argument, the relevant portions of the record, and the relevant law. Being otherwise fully advised in the premises, the Court will **GRANT** Defendants' Motion.

---

[1] Defendants filed an identical—yet sealed—Motion for Summary Judgment on the same date. [Doc. 15]. Because Defendants filed the unsealed Motion and because two duplicative Motions exist on the record, the Court will, for simplicity's sake, cite only to the unsealed Motion, [Doc. 16].

## I. BACKGROUND[2]

On February 21, 2018, the District Attorney's Office in Lea County, New Mexico, filed a petition to revoke Plaintiff Shannon Jeter's probation on the grounds that he had violated conditions of probation. [Doc. 16] at 16. Jeter was arrested and processed into the Lea County Detention Facility on March 29, 2018. *Id.* at 17–19. On May 14, 2018, the Honorable Mark Sanchez, District Judge in New Mexico state court, held a probation violation hearing. *Id.* at 20. Plaintiff, his Public Defender, and a District Attorney attended the hearing. *Id.* Judge Sanchez found that Plaintiff had violated his probation and ordered him incarcerated. *Id.* Upon his return to LCDF, Plaintiff told Salinas—an officer at LCDF—that the detention facility should release him immediately because he had sufficient confinement credit to satisfy his sentence in full. [Doc. 17] at 2; [Doc. 17-1] at 1. Through June 12, 2018, he continued to complain to Salinas that he should be released. [Doc. 17-1] at 1. At one point, when viewing Plaintiff's paperwork, Salinas said, "Oh shit, you're right, we could get in trouble for this." *Id.*[3]

On June 12, 2018, Judge Sanchez issued an Order Revoking Probation and Commitment to the Lea County Detention Center (the "Order"). [Doc. 16] at 21. The Order did not provide a certain release date. Rather, Judge Sanchez ordered Plaintiff confined to the LCDF for 364 days, with a "total" confinement credit of 46 days "as set forth in the Confinement Credit Attachment." *Id.* at 22. The Confinement Credit Attachment, however, stated that Plaintiff had 540 days of credit. *Id.* at 24. Thus, based on the Attachment, his confinement credit exceeded his sentence. *See id.* at 22, 24.

---

[2] As Defendants move for summary judgment, these facts are taken in the light most favorable to Plaintiff. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).
[3] It is unclear why Salinas said this. *See id.*

LCDF employee Kristie Parish emailed the District Attorney's Office on June 13, 2018, asking for "clarification on the . . . Order." [Doc. 16] at 26. Receiving no response, she emailed the District Attorney's Office a second time on June 27, 2018. *Id.* at 32. The District Attorney's Office eventually responded to Parish by stating that it would prepare an amended order. *Id.* No one from LCDF contacted Judge Sanchez's office seeking clarification of the Order.

Judge Sanchez entered an Amended Order Revoking Probation and Commitment to the Lea County Detention Center (the "Amended Order") on July 2, 2018.[4] *Id.* at 34. The Amended Order confirmed Plaintiff's confinement credit and explicitly ordered a release date of July 11, 2018. *Id.* at 35. Plaintiff was released on July 11, 2018. *Id.* at 19.

## II. PROCEDURAL HISTORY

Plaintiff sued LCDF on September 28, 2018. [Doc. 1]. He filed an Amended Complaint on December 27, 2018, adding Salinas as a Defendant. [Doc. 9]. In his Amended Complaint, Plaintiff alleges that Defendants falsely imprisoned him for approximately one month after his sentence should have terminated. *Id.* at 2. He claims that Defendants are liable for his false imprisonment (1) under the Fourth Amendment pursuant to 42 U.S.C. § 1983, and (2) under New Mexico law.[5] *Id.* at 3–4. Plaintiff claims that LCDF is liable for his false imprisonment due to its failure to train and supervise its officers "regarding how to read a confinement order to

---

[4] Though LCDF submits an email chain between Parish and District Attorney's Office employees that suggests that the District Attorney's Office prepared the Amended Order, it is unclear based on the record whether the Amended Order entered by Judge Sanchez is the same proposed amended order that the District Attorney's Office sent him. *See id.* at 32. It is similarly unclear whether the District Attorney's Office actually sent Judge Sanchez an amended order. *See id.* For summary judgment purposes, therefore, the Court assumes the Judge Sanchez entered his Amended Order without prompting from the District Attorney's Office.

[5] The New Mexico Tort Claims Act ("NMTCA") waives the statutory immunity of "law enforcement officers" for false-imprisonment claims. N.M. Stat. Ann. § 41-4-12 (2019). Salinas does not argue that he is not a law enforcement officer under the NMTCA.

determine whether the sentence had already been served in full." *Id.* at 3. Defendants filed their Motion for Summary Judgment on January 16, 2019. [Doc. 16].

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must deny summary judgment if a reasonable jury could find for the non-movants. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When applying this standard, the court must construe the evidence in the light most favorable to the non-moving parties. *Tolan*, 572 U.S. at 657. The party moving for summary judgment has the initial burden of establishing that there is an absence of evidence supporting the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If the movant meets this burden, the parties opposing summary judgment must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1526 n.11 (10th Cir. 1992).

### IV. ANALYSIS

Defendants argue that summary judgment is proper for four reasons. First, they argue that Salinas is entitled to qualified immunity because he violated no clearly established constitutional right when he declined to release Plaintiff absent a court order. [Doc. 16] at 7–10, 13. Second, they argue that no false imprisonment occurred because Defendants released Plaintiff as ordered by the state court. *Id.* at 7–10. Third, they argue that neither Defendant falsely imprisoned Plaintiff under state law for the same reason. *Id.* Finally, they contend that all claims against LCDF must

be dismissed because the detention facility is not a proper party under § 1983 or the NMTCA. *Id.* at 5–7.

Plaintiff argues that clearly established law under the Fourth, Eighth, and Fourteenth Amendments required Defendants to (1) calculate his release date because the Order lacked a precise release date, (2) release him upon seeing that his confinement credits in the Confinement Credit Attachment exceeded his sentence, and (3) investigate the discrepancies between the Order and the Confinement Credit Attachment. [Doc. 17] at 3–14.

The Court finds that Defendants are entitled to summary judgment because neither Salinas nor LCDF violated Plaintiff's constitutional or state-law rights. Having found no constitutional violation, the Court need not decide whether Salinas is entitled to qualified immunity. *See Hampton v. Hein*, No. 10-cv-1029 WDS/ACT, 2011 WL 13282121, at *4 (D.N.M. Nov. 18, 2011).

**A.    Salinas did not violate Plaintiff's constitutional rights because no court order compelled Plaintiff's release, and because Salinas had no duty to investigate Plaintiff's complaints.**

Plaintiff claims that he was over-detained in violation of the Fourth, Eighth, and Fourteenth Amendments. [Doc. 17] at 6–14. But Salinas did not violate any of Plaintiff's constitutional rights. An officer at a jail cannot release a prisoner because he believes a detention order is ambiguous. He may release a prisoner only upon a court order mandating release. Plaintiff therefore cannot argue that Salinas erred by failing to release him sua sponte upon seeing that his confinement credit exceeded his sentence. The issue is whether Salinas violated the Constitution by failing to adequately investigate the alleged discrepancies in the Order.

"[A] reasonable division between law enforcement officers . . . and judicial officers" must exist in the criminal justice system. *Baker v. McColland*, 443 U.S. 137, 145 (1979). To that end,

"the official charged with maintaining custody of the accused named in [a] warrant [is not] required by the Constitution to perform an error-free investigation of . . . a claim [of innocence]." *Id.* at 146. Thus, under New Mexico law, neither a jail nor a jailer may release a prisoner absent a court order or expiration of the commitment described in the confinement order. N.M. Stat. Ann. § 33-3-12(A)–(B) (2019).[6]

The Tenth Circuit has held that an officer has no constitutional duty to independently investigate a plaintiff's claim that he was wrongfully incarcerated. *Scull v. New Mexico*, 236 F.3d 588, 598 (10th Cir. 2000). In *Scull*, the plaintiff, Timothy Reed, was arrested and detained in the Taos County Adult Detention Center ("TCADC") for violating parole. *Id.* at 592. A judge later granted Reed's writ of habeas corpus and ordered the TCADC to release him. *Id.* After his release, Reed was arrested a second time and detained in the Bernalillo County Detention Center ("BCDC") on an outstanding warrant for the same alleged parole violation. *Id.* Reed showed BCDC officers his release order, but they neither released him nor investigated his complaints. *Id.* Nancy Scull, Reed's representative after he died, sued the State of New Mexico, Bernalillo County, the City of Albuquerque, and various state and local officials for constitutional violations and false imprisonment under 42 U.S.C. §§ 1983, 1985, & 1986 and the NMTCA. *Id.* at 590–91.

The Tenth Circuit held that none of the defendants violated Reed's constitutional rights. First, the Tenth Circuit noted that the release order mandated that TCADC release the plaintiff, not BCDC:

> Given the terms of [the] order, we fail to see how [the plaintiff] had either a constitutional or statutory right to be released from the BCDC. [He] is, in essence,

---

[6] In fact, not only is it impermissible for a prison official to release a prisoner without a court order or expiration of the commitment, but she would be *guilty of a misdemeanor* if she did so. § 33-3-12(B).

arguing that the BCDC Appellees should have released him on the basis of Judge Nelson's *reasoning*, rather than the strict terms of the order.

*Id.* at 597. Second, the Tenth Circuit rejected the plaintiff's argument that, because the jailers knew of the writ, they should have "investigate[d] the matter—for example, by contacting Judge Nelson." *Id.* Though the court did not endorse the jail's failure to pursue the matter—"a simple phone call might have expedited resolution of [the] case"—it nonetheless "conclude[d] that the [officers] were not required by either the Constitution or statute to investigate independently [the plaintiff's] claim that he should be released within this time frame." *Id.* at 598.

The District of New Mexico has relied on *Scull* to hold that even where a prisoner notifies the jail that his detention is invalid, the jail may constitutionally refuse to investigate his claims. In *Hampton v. Hein*, the plaintiff was booked into the San Juan County Detention Center ("SJCDC") on various criminal charges and failing to report to his parole officer. 2011 WL 13282121, at *2–3. The plaintiff then "sent numerous letters to [SJCDC Officer] Janet Howell" claiming that he was being illegally held pursuant to an invalid parole hold. *Id.* at *4. He believed that his parole had ended months prior to his detention. *Id.* at *1. After confirming with the parole board that it should indeed detain him, the detention center declined to release the plaintiff. *Id.* at *3. He sued various state and local officials, including Thomas Havel, the administrator of SJCDC. Havel moved for summary judgment on the § 1983 wrongful-detention claim. *Id.* at *1.

The court rejected Hampton's wrongful-detention claim, finding that so long as the detention center confined him "on a facially valid warrant, and released [him] immediately upon being ordered to do so," no constitutional violation had occurred. *Id.* at *4. The court also concluded that, though SJCDC checked with the parole board to ensure they had authority to detain him, "the Tenth Circuit has made it clear that . . . SJCDC had [no] independent duty to investigate"

7

Hampton's complaints that he should be released. *Id.* (citing *Scull*, 236 F.3d 588); *see also Harrison v. Bernalillo Cty. Metro. Det. Ctr.*, No. 08-cv-0042 WJ/RHS, 2009 WL 10696438, at *2 (D.N.M. Apr. 30, 2009) (granting summary judgment on the plaintiff's false-imprisonment claim because "the County Defendants, as jailors, had no duty to investigate Plaintiff's claim that he should have been released in the face of the bench warrant for his arrest which specified no bond and in the absence of any order for his release. Further, Defendants had no duty to seek a hearing for Plaintiff or to investigate the validity of the arrest order responsible for his incarceration . . . ." (citing *Scull*, 236 F.3d at 598)); *Gonzales v. City of Albuquerque*, No. 01-cv-1023 DJS/RLP, 2002 WL 35649685, at *4 (D.N.M. Aug. 12, 2002) ("[The detention center] had no duty under either federal or New Mexico law to conduct an investigation into Plaintiff's claims that he had been wrongfully arrested. [It] could have only released Plaintiff pursuant to a valid court order." (first citing *Scull*, 236 F.3d at 597–98; and then citing *Baker*, 443 U.S. at 145)).

Here, Salinas had no duty to investigate Plaintiff's claim that he should be released, nor could Salinas release him without a court order. Accordingly, no reasonable jury could find that Salinas violated the Constitution. As in *Scull* and *Hampton*, the Order and Amended Order were facially valid and clearly stated the term of Plaintiff's incarceration: 364 days[7] (the Order) and until July 11, 2018 (the Amended Order). Salinas therefore did not err by detaining Plaintiff until July 11, 2018. Even if the Confinement Credit Attachment created some confusion, an attachment is not binding on the detention center; only the Order is.[8] In essence, Plaintiff argues that the

---

[7] For simplicity's sake, the Court refers to the sentence as 364 days, excluding the 46 days of confinement credit and the 21 days of credit against his original sentence listed on page two of the Order. *See* [Doc. 16] at 22.

[8] Though Plaintiff argues that the Order incorporated the Confinement Credit Attachment by reference, [Doc. 17] at 8–9, the Attachment did not bind anyone. The Order clearly mandated that Plaintiff be incarcerated for 364 days and said he "shall receive a total confinement credit of forty[-]six (46) days as set forth in the Confinement Credit Attachment." [Doc. 16] at 2. The court did not say Plaintiff "shall receive confinement credit as set forth in the

*reasoning* behind his sentence—namely, the math behind it—compelled Salinas to investigate. He argues that Salinas should have contacted Judge Sanchez's chambers to clarify the Order. [Doc. 17] at 9. The Tenth Circuit rejected similar arguments in *Scull*, even though "a simple phone call might have [resolved the] case." *Scull*, 236 F.3d at 598. Though Plaintiff complained to Salinas, just as the plaintiff in *Hampton* complained to Officer Howell, those complaints did not trigger a duty to investigate. As Salinas had no duty to investigate Plaintiff's complaints, the facts taken in the light most favorable to Plaintiff fail to establish a constitutional violation.

The Court could find no authority from the Tenth Circuit or the Supreme Court requiring a detention center officer to notify the sentencing court of a possible clerical error. Salinas followed the Order and Amended Order. No constitutional provision required him to do anything more. Thus, no reasonable jury could hold him liable under § 1983.

**B.    No reasonable jury could find that Salinas or LCDF falsely imprisoned Plaintiff under New Mexico law because they had lawful authority to incarcerate him and acted in good faith.**

In New Mexico, "[t]he tort of false imprisonment occurs when a person intentionally confines or restraints another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84. If "[t]he law indicates that Defendant had the authority to detain Plaintiff . . . and he acted in good faith," then he did not falsely imprison Plaintiff. *Stirling v. Campos*, No. 13-cv-0520 JCH/RHS, 2014 WL 12782789, at *7 (D.N.M. Dec. 31, 2014). As noted above, the Order and Amended Order clearly gave Salinas—and thus LCDF—the lawful authority to detain Plaintiff. By

---

Confinement Credit Attachment." Rather, it listed the exact amount of confinement credit Plaintiff received and attached the math behind its determination. The Attachment cannot trump the plain language of the Order.

following its terms, they acted in good faith when continuing to detain him. Neither did they have a duty to investigate to confirm that they had the authority to continue detaining him, especially after the Order and Amended Order facially gave them such authority. Therefore, no reasonable jury could find that Defendants falsely imprisoned Plaintiff under New Mexico law. *See Harrison*, 2009 WL 10696438, at *2 ("Plaintiff argues that the County Defendants should have known that they had no lawful authority to confine him, but has not shown that they did in fact have actual knowledge they lacked lawful authority. As discussed, Defendants had no duty to investigate the validity of the warrants which resulted in Plaintiff's custody."); *Gonzales*, 2002 WL 35649685, at *4.

C. **LCDF is entitled to summary judgment because (1) Plaintiff concedes that it is not a proper party under § 1983 or New Mexico law, and (2) amending the Amended Complaint would be futile.**

LCDF argues that Plaintiff's claims against it must be dismissed because it is not a proper party under federal or state law. It argues that a detention facility is not a "person" under § 1983. [Doc. 16] at 6. Furthermore, it contends that the NMTCA waives immunity for false imprisonment only if the plaintiff sues the board of county commissioners of the county—not the detention center itself. *Id.* at 6–7. Plaintiff responds to neither of these arguments, effectively conceding them as correct. More to the point, the Court agrees with LCDF that it is not a proper party under either statute. "[A] detention center is not a suable entity in a § 1983 action." *Apodaca v. N.M. Adult Prob. & Parole*, 998 F. Supp. 2d 1160, 1190 (D.N.M. 2014); *see Aston v. Cunningham*, No. 99-4156, 216 F.3d 1086, 2000 WL 796086, at *4 n.3 (10th Cir. June 21, 2000). The NMTCA waives sovereign immunity for suits against the entity for whom a public employee works; in this case, Lea County. *See Abalos v. Bernalillo Cty. Dist. Attorney's Office*, 1987-NMCA-026, ¶ 18,

105 N.M. 554. This waiver is limited, however, by N.M. Stat. Ann. § 4-46-1, which provides that a plaintiff may sue a county only if the plaintiff sues "the board of county commissioners of the county." *See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 272 F. Supp. 3d 1256, 1267–68 (D.N.M. 2017) (holding that, for the NMTCA to waive immunity for a county detention center, the plaintiff must sue the board of county commissioners). Therefore, the Court will enter judgment in favor of LCDF.

The Court declines to grant Plaintiff leave to amend his Amended Complaint because doing so would be futile. "A district court may refuse to allow amendment if it would be futile." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Amendment is futile when the complaint, as amended, would be subject to dismissal. *Id.* As to Plaintiff's § 1983 claims, the Court has already determined that Salinas did not violate Plaintiff's constitutional rights. Because no underlying constitutional violation occurred, Plaintiff cannot hold the county liable for its failure to train or supervise Salinas. *See Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004) ("[T]he Supreme Court noted that a municipality cannot be liable under § 1983 if the officer in fact inflicted no constitutional harm." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986))); *Saenz v. Lovington Mun. Sch. Dist.*, 105 F. Supp. 3d 1271, 1314 (D.N.M. 2015) ("A municipal entity's liability requires an underlying constitutional violation. . . . Similarly, a failure-to-train or failure-to-supervise claim requires an underlying constitutional violation."); *see also Mayer v. Bernalillo Cty.*, No. 18-cv-0666 JB/SCY, 2018 WL 6594231, at *27 (D.N.M. Dec. 13, 2018) (noting the legal similarities between counties and municipalities). As to his state claims, the Court has already determined that neither Salinas nor LCDF falsely imprisoned

Plaintiff. Therefore, it would be futile to allow Plaintiff to amend his Complaint again to substitute the Board of County Commissioners for LCDF.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment, [Doc. 15], [Doc. 16], is **GRANTED**. As no claim against any Defendant remains, judgment is entered in favor of Defendants.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**